1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| THE BOARD OF TRUSTEES in their capacities as Trustees of the CONSTRUCTION INDUSTRY AND LABORERS HEALTH AND WELFARE TRUST FUND, et al., | 2:11-CV-1579 JCM (VCF) |
| Plaintiff(s), | |
| v. | |
| ROAD AND HIGHWAY BUILDERS, LLC, | |
| Defendant(s). | |

**ORDER**

Presently before the court is plaintiffs the board of trustees, in their capacities as trustees of the Construction Industry and Laborers Health and Welfare Trust Fund *et al.*'s motion for summary judgment. (Doc. # 27). Defendant Road and Highway Builders, LLC responded (doc. # 41), and plaintiffs replied (doc. # 45). Also before the court is defendant's motion for summary judgment. (Doc. # 34). Plaintiffs responded (doc. # 36), and defendant replied (doc. # 46).

**I.    Factual background**

Plaintiffs are trustees of the Construction Industry and Laborers Health and Welfare Trust, Construction Industry and Laborers Joint Pension Trust, Construction Industry and Laborers Vacation Trust, and Southern Nevada Laborers Local 872 Training Trust. Plaintiffs are multiemployer benefit plans within the meaning of the Employee Retirement Income Security Act

**James C. Mahan**
**U.S. District Judge**

of 1974 (ERISA). (Doc. # 32, ¶ 4). The trustees have a fiduciary duty to act solely in the interest of the participants of each trust fund and to maintain and protect the assets of the various trust funds to ensure that participant benefits are available. (Doc. # 32, ¶ 5).

Premier Traffic Control, Inc., a non-party, is a signatory to a collective bargaining agreement with the Laborers International Union of North America Local 872 (union). (Doc. # 32, ¶ 7). Premier is a member of Associated General Contractors (AGC). (Doc. # 32, ¶ 7; Ex. C). Based on Premier's membership to AGC, Premier became subject to all the terms and conditions of the master agreement between the union and the AGC. (Doc. # 32, ¶ 7 ; Ex. C; Ex. A; Ex. B). Premier's obligations under the master agreement include the obligation to make contributions to plaintiffs as specified in the master agreement. (Doc. # 32, ¶ 8; Ex. A; Ex. B).

The agreement provides for payment of hourly fringe benefit contributions on behalf of individuals performing work covered by the collective bargaining agreement to each plaintiff trust fund. (Doc. # 32, Ex. A; Ex. B). Premier is bound to the trust agreement for the respective trust funds, which each provide for contract compliance audits and payment of amounts due, as well as liquidated damages, interest, audit costs, and attorneys' fees and costs. (Doc. # 32, ¶¶ 14-; Ex. D; Ex. E; Ex. F; Ex. G).

Plaintiffs' auditors conducted a compliance audit of Premier. (Doc. # 32, ¶ 19; doc. # 31, ¶ 4). The auditors determined that Premier was delinquent. (Doc. 31, ¶ 4). Plaintiffs demanded Premier pay the amounts found due and owing from the audit. (Doc. # 32, ¶ 20). Premier failed to pay these amounts, thus plaintiff's brought a case against Premier and obtained a stipulated/consent judgment against Premier. (Doc. # 32, ¶ 20; doc. # 28, Ex. A).[1] To date, Premier has failed to pay its delinquent contributions. (Doc. # 32, ¶ 21).

Plaintiffs bring the instant action against defendant Road and Highway Builders, LLC for (1) breach of contract; (2) actual damages for breach of contract; and (3) audit. (Doc. # 1). Defendant was the general contractor on some of the projects on which Premier was a subcontractor. (Doc. #

---

[1] Pursuant to Fed. R. Evid. 201, the court takes judicial notice of the stipulated/consent judgment against Premier in case number 2:09-cv-02252-LRH-LRL. A court may take judicial notice of matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 688, 689 (9th Cir. 2001).

James C. Mahan
U.S. District Judge

1  30, Ex. A, No. 1). Plaintiffs' auditors prepared an audit report of Premier's delinquencies attributable

2  to work for which defendant was the general contractor. (Doc. # 31, Ex. A; Ex. B). The total amount

3  due of unpaid contributions due to plaintiffs is $166,946.34. (Doc. # 31, ¶ 6). As of March 20, 2012,

4  the interest on Premier's unpaid contributions for work on projects on which defendant was the

5  general contractor was $71,899.77, (doc. # 31, ¶ 8), and the liquidated damages was $71,899.77 (doc.

6  # 31, ¶ 10). The cost of the contract compliance audit was $2,435.19. (Doc. # 31, ¶ 11).

7         Plaintiffs' motion for summary judgment argues that defendant, as a general contractor under

8  NRS § 608.150, is liable for Premier's failure to pay its delinquent contributions to plaintiffs. (Doc.

9  # 27, 1:11-15). Defendant's motion for summary judgment argues that it neither signed a collective

10  bargaining agreement with the union nor gave a proxy to the AGC or any other group to sign a

11  collective bargaining agreement. (Doc. # 34, 2:18-21). Thus, defendant cannot be liable under

12  ERISA for the unpaid employee contributions of its subcontractors.

13  **II.    Standard of review**

14         The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings,

15  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

16  show that "there is no genuine issue as to any material fact and that the movant is entitled to a

17  judgment as a matter of law." FED. R. CIV. P. 56(a). A principal purpose of summary judgment is "to

18  isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24

19  (1986).

20         In determining summary judgment, a court applies a burden-shifting analysis. "When the

21  party moving for summary judgment would bear the burden of proof at trial, it must come forward

22  with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.

23  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue

24  of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213

25  F.3d 474, 480 (9th Cir. 2000) (citations omitted).

26         In contrast, when the nonmoving party bears the burden of proving the claim or defense, the

27  moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential

28

**James C. Mahan**
**U.S. District Judge**

1  element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to

2  make a showing sufficient to establish an element essential to that party's case on which that party

3  will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails

4  to meet its initial burden, summary judgment must be denied and the court need not consider the

5  nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

6       If the moving party satisfies its initial burden, the burden then shifts to the opposing party

7  to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*

8  *Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing

9  party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the

10 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions

11 of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th

12 Cir. 1987).

13      In other words, the nonmoving party cannot avoid summary judgment by relying solely on

14 conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045

15 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the

16 pleadings and set forth specific facts by producing competent evidence that shows a genuine issue

17 for trial. *See Celotex Corp.*, 477 U.S. at 324.

18      Where a moving party's papers are insufficient to support a motion for summary judgment,

19 or reveal a genuine issue of material fact, summary judgment is inappropriate. *Martinez v. Stanford*,

20 323 F.3d 1178, 1182-83 (9th Cir. 2003).

21 **III.   Discussion**

22     **A.   Jurisdiction under Labor Management Relations Act (LMRA)**

23      As a preliminary matter, the court addresses whether it has proper subject matter jurisdiction

24 over the instant case.

25      Defendant argues that the court does not have jurisdiction under § 301 LMRA, 29 U.S.C. §

26 185. Defendant relies on *Painting and Decorating Contractors Assoc. v. Painters and Decorators*

27 *Joint Comm.*, 707 F.3d 1067 (9th Cir. 1983). In *Painters*, the Ninth Circuit directly addressed the

28

**James C. Mahan**
**U.S. District Judge**

1  "question of whether a non-signatory to a collective bargaining agreement is a proper party to a suit

2  brought under § 301(a) of the Labor Management Relations Act." *Id.* at 1068-69. Defendant states

3  that in order for jurisdiction to be proper, the suit must be "based on an alleged breach of contract

4  between an employer and a labor organization and that the resolution of the lawsuit be focused upon

5  and governed by the terms of the contract." *Id.* at 1071 (citation omitted).

6        Defendant argues that its rights and liabilities flow from a statute, NRS § 608.150, and not

7  the collective bargaining agreement between the workers and Premier; thus there is no federal

8  question jurisdiction under § 301 of the LMRA. *See Carpenters Southern California Admin. Corp.*

9  *v. Majestic Housing*, 743 F.2d 1341 (9th Cir. 1984) (holding that because defendant's right and

10  liabilities were entirely of statutory origin, as the defendant did not have any rights or liabilities

11  under the agreement, defendant's liability was not "focused upon" the agreement, precluding

12  jurisdiction under § 301. *Id.* at 1345), *abrogation recognized on other grounds by S. California*

13  *IBEW-NECA Trust Funds v. Standard Indus. Elec. Co.*, 247 F.3d 920, 924 (9th Cir. 2001).

14        Plaintiff argues that this court has proper jurisdiction over this case as defendant's liability

15  under NRS § 608.150 necessarily looks to the collective bargaining agreement to determine

16  Premier's "indebtedness." Plaintiff distinguishes *Majestic Housing*, 743 F.2d 1341, arguing that in

17  that case, the liability was set forth under a mechanic's lien. Thus, the court need only enforce the

18  lien, and need not look to the collective bargaining agreement to determine liability. In contrast, NRS

19  § 608.150 holds an original contractor liable for the subcontractor's "indebtedness for labor" and the

20  court must look to the collective bargaining agreement to determine the amount of indebtedness.

21        The court finds plaintiff's argument persuasive. Further, this court has previously found that

22  it had jurisdiction under § 301 of the LMRA in an action in which a non-signatory general contractor

23  was liable for debts of the signatory subcontractor under NRS § 608.150. *See Trustees of the*

24  *Operating Engineers Pension Trust v. Thornton Concrete Pumping, Inc.*, 806 F. Supp. 2d 1135,

25  1139-41(D. Nev. 2011). The court does not find any reason to depart from its previous determination

26  of jurisdiction.

27  . . .

28

**James C. Mahan**
**U.S. District Judge**

- 5 -

**B.      Signatory to collective bargaining agreement**

The parties do not dispute the audit amount. Instead, the parties' positions turn on whether defendant's non-signatory status impacts its liability under ERISA for the unpaid contributions.

NRS § 608. 150(1) provides, in part:

> Every original contractor making or taking any contract in this State for the erection, construction, alteration or repair of any building or structure, or other work, shall assume and is liable for the indebtedness for labor incurred by any subcontractor or any contractors acting under, by or for the original contractor in performing any labor, construction or other work included in the subject of the original contract, for labor, and for the requirements imposed by chapters 616A to 617, inclusive, of NRS.

NRS 608.150(1). This statute provides that a contractor who hires a subcontractor that is obligated or delinquent in some respect as to certain "indebtedness" is liable for such indebtedness, including delinquent fringe benefits. *See Tobler & Oliver Const. Co. v. Board of Trustees of the Health and Ins. Fund for Carpenters Local Union No. 971*, 442 P.3d 904, 906 (Nev. 1968). The "indebtedness" also includes liquidated damages and attorneys' fees arising from a collective bargaining agreement without prior notice of the claim required under state law for claims against payment bonds. *Trustees of the Const. Ind. & Laborers Health and Welfare Trust et al. v. Hartford Accident and Indemnity Co.*, 578 F.3d 1126, 1128-29 (9th Cir. 2009).

Defendant argues that it is not an "employer" as the term is understood by ERISA, 29 U.S.C. § 1145, and therefore cannot be liable for the unpaid employee contributions of its subcontractor, Premier. Further, defendant relies on *Trustees, Screen Actors Guild Producers Pension an Health Plans v. NYCA, Inc.*, 572 F.3d 771 (9th Cir. 2009), for the proposition that "§ 1145 imposes no independent obligation upon employers; it merely provides a federal cause of action to enforce pre-existing obligations created by collective bargaining agreements." *Id*. at 776. The court went on to state that the employer had not incurred any pre-existing obligation under § 1145 because the employer did not sign a collective bargaining agreement. *Id.*

On this basis, defendant argues that there is no genuine issue of material fact as to whether defendant was a signatory to the collective bargaining agreement or whether defendant granted proxy. Thus, defendant contends that summary judgment should be granted in its favor on plaintiffs'

James C. Mahan
U.S. District Judge

- 6 -

1  ERISA claims.

2        Plaintiffs state that they do not allege a "joint employer" theory under ERISA. The case cited

3  by defendant holds that "[t]he trustees' 'joint employer' theory, by seeking to impose obligations

4  above and beyond those required by collective bargaining agreements, directly conflict with the plain

5  language of [§ 1145]." *Id.* Because plaintiffs' claims against defendant are not based on the "joint

6  employer" theory, the court does not find *NYCA* controlling here.

7        Premier's "indebtedness" is determined in accordance with §§ 502(g) and 515 of ERISA, 29

8  U.S.C. §§ 1132(g), 1145, and as set forth in the collective bargaining agreement and the trust

9  agreement. Defendant was the "original contractor" for Premier within the meaning of NRS 608.150.

10  Thus, as a result of defendant subcontracting work to Premier and Premier's failure to pay fringe

11  benefit contributions to plaintiffs, the court finds defendant liable for the unpaid amounts unless a

12  defense applies.

13        **C.    Equitable Estoppel**

14        Equitable estoppel focuses on the defendant's affirmative actions that prevent a plaintiff from

15  filing a suit. *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir.2000) (citing *Naton v. Bank of*

16  *California*, 649 F.2d 691, 696 (9th Cir.1981)). To determine whether equitable estoppel applies,

17  courts consider several factors, such as whether the plaintiff actually relied on the defendant's

18  representations, whether such reliance was reasonable, whether there is evidence that the defendant's

19  purpose was improper, whether the defendant had actual or constructive knowledge that its conduct

20  was deceptive, and whether the purposes of the statute of limitations have been satisfied. *Naton*, 649

21  F.2d at 696 (citations omitted).

22        Defendant contends that Premier submitted payroll reports to defendant falsely certifying that

23  Premier had been making fringe benefit contributions. (Doc. # 41, Ex. 2, ¶ 7). Further, defendant

24  points out no one from the union informed defendant that Premier was not paying fringe benefits.

25  (Doc. # 41, Ex. 2, ¶¶ 5, 6, and 8). Defendant argues that the doctrine of equitable estoppel is

26  applicable. *See Cheqer, Inc. v. Painters and Decorators Joint Comm., Inc.*, 655 P.2d 996 (Nev.

27  1982) (stating that summary judgment was inappropriate where material questions of fact existed

28

**James C. Mahan**
**U.S. District Judge**

1   as to whether the union intended its conduct in allowing its members to continue working for the

2   subcontractor to be acted upon by the general contractor when the union knew that the subcontractor

3   was delinquent. *Id.* at 999.).

4        Defendant argues that here, plaintiffs knew of the unpaid contributions before November 24,

5   2009, when plaintiffs pursued an action against Premier, not on February 22, 2010 as plaintiffs'

6   complaint states. Therefore, defendant contends that whether the union kept quiet about Premier's

7   unpaid fringe benefit contributions so that defendant would not terminate its subcontract, remains

8   a material question of fact under equitable estoppel.

9        Plaintiff argues that the Ninth Circuit has rejected a general contractor's equitable estoppel

10  defense based on lack of notice. *See Hartford*, 578 F.3d at 1129-30. In *Hartford*, the Ninth Circuit

11  certified to the Nevada Supreme Court the question of whether notice was required to recover against

12  a general contractor under NRS § 608.150. *Id.*; *see also Trustees of the Const. Ind. & Laborers*

13  *Health and Welfare Trust et al. v. Hartford Accident and Indemnity Co.*, 482 F.3d 1064, 1066. The

14  Nevada Supreme Court held that trustees need not provide notice of claims brought against a

15  contractor under NRS § 608.150. *Hartford Fire Ins. Co. v. Trustees of Const. Industry*, 208 P.3d 884,

16  895 (Nev. 2009).

17       The court finds defendant's contention that the union failed to inform defendant of Premier's

18  delinquency misplaced. Equitable estoppel focuses on the defendant's affirmative actions that

19  prevent a plaintiff from filing a suit. *Santa Maria*, 202 F.3d at 1176. On this basis, the union's

20  actions or inactions are inconsequential to this analysis. To the extent that defendant raises equitable

21  estoppel based upon plaintiffs' failure to inform defendant of Premier's delinquencies,[2] the court

22  finds that defendant has not alleged sufficient facts to support a rational inference that defendant's

23  ignorance of Premier's delinquency was excused. *See Hartford*, 578 F.3d at 1129-30.

24  **IV.    Conclusion**

25       According to the foregoing,

26

27       _____

28       [2] Although, according to *Hartford*, plaintiffs did not have an affirmative duty to notice defendant of a potential claim under NRS § 608.150. *See id.* 208 P.3d 884. 885.

**James C. Mahan**
**U.S. District Judge**

1    IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant Road and

2 Highway Builders, LLC's motion for summary judgment (doc. # 34) be, and the same hereby is,

3 DENIED.

4    IT IS FURTHER ORDERED that the board of trustees, in their capacities as trustees of the

5 Construction Industry and Laborers Health and Welfare Trust Fund *et al.*'s  motion for summary

6 judgment (doc. # 27) be, and the same hereby is, GRANTED.

7    IT IS FURTHER ORDERED that defendant Road and Highway Builders, LLC pay the board

8 of trustees, in their capacities as trustees of the Construction Industry and Laborers Health and

9 Welfare Trust Fund *et al.*:

10    1.    Delinquent contributions of $166,946.34;

11    2.    Interest on the delinquent contributions at a rate of fourteen percent (14%) per annum

12          from the due date until the date of judgment;

13    3.    Liquidated damages in an amount equal to the interest due;

14    4.    Audit fees of $2,435.19; and

15    5.    Attorneys' fees and costs according to proof.

16    6.    Plaintiff is to prepare an appropriate judgment.

17    DATED November 19, 2012.

18

19    _____

20    **UNITED STATES DISTRICT JUDGE**

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**